JORDAN P. SMITH, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Practice in Criminal Cases:** QUALIFICATION OF JURORS. Where it appears that a person called as a juror has formed an opinion as to the guilt or innocence of the accused from reading reports of the testimony of witnesses of the transaction, he is incompetent to sit as a juror in the case. *Carroll v. The State,* *ante* page 31.

2. ———: EXAMINATION OF WITNESSES. A witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony.

3. ———: INSTRUCTIONS TO JURY should be given with reference to the evidence in each particular case.

ERROR from the district court of Kearney county. Tried below before POST, J.

IT was an indictment for murder and came before this court in 1876, being reported in 4 Neb., 277. The accused being then awarded a new trial procured a change of venue to Kearney county, where he was found guilty of murder in the second degree and sentenced to imprisonment in the penitentiary for thirty years. He again brought the cause here upon writ of error. The facts necessary to an understanding of the points passed upon by the court appear in the opinion.

*E. F. Gray,* for plaintiff in error.

*George H. Roberts, Attorney General,* for the state.

MAXWELL, J.

While the jury were being impaneled in the case, John Bartlett was called as a juror, who, being examined on his *voir dire,* testified as follows: "I live at

Lowell; have been here about three years; came from Kearney Junction; have lived here ever since I came here; have formed and expressed an opinion as to the guilt or innocence of the accused; I have read the papers, and have been at the Junction, and had conversation with parties there; I know nothing about the facts in the case, except what I have heard and read; my opinion is formed from reading evidence published in the papers; as far as I recollect, it was published in full; notwithstanding that opinion, I think I could render a fair and impartial verdict upon the evidence introduced here; I think the opinion I have formed would have no effect whatever, upon my judgment; the opinion I had, I have now." Whereupon the counsel for the prisoner challenged said juror for cause; which challenge was overruled by the court, to which the prisoner's counsel excepted.

In *Curry v. The State*, 4 Neb., 548, this court, in construing section 468 of the criminal code, say: "Where the ground of challenge is the formation, or expression, of an opinion by the juror, before the court can exercise any discretion as to his retention upon the panel, it must be shown by an examination of the juror on his oath, not only that his opinion was formed solely in the manner stated in this proviso" (upon reading newspaper statements, communications, comments, or reports, or upon rumor, or hearsay, and *not* upon conversation with witnesses of the transaction, or reading reports of their testimony, or hearing them testify); "but, in addition to this, the juror must swear, unequivocally, 'that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence.'" It is clear, therefore, that, when a person called as a juror has formed an opinion as to the guilt or innocence of the accused from reading reports of the *testimony of witnesses of the transaction*, he is incompetent to sit in the case, although

he might swear, unequivocally, that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence. See *Carroll v. The State—ante* page 31. The court, therefore, erred in overruling the challenge to the juror in question.

Other jurors challenged for cause appear to have formed their opinions from hearsay; the challenges as to them were, therefore, properly overruled.

Daniel A. Crowell, a witness for the state, on cross-examination, testified as follows:

" Q. Didn't you testify, on the former trial, that at the time of the shooting, you were only ten or fifteen rods, at the most, from the parties?

" A. No! I didn't testify to that; I testified this way: ' It may be ten, fifteen, twenty, or it may be thirty rods.' I have since stepped it. I was asked the question whether it was ten rods; and I said it was ten, fifteen, twenty, or may be thirty rods."

The defense called Thomas J. Hewitt, one of the attorneys for the prisoner, who testified that he was present during the former trial, and heard the testimony of Daniel A. Crowell, and took notes thereof. He was then asked: " What did Crowell testify was the distance from where he stood, at the time of the shooting, to Collins' house?" Which was objected to by the state as incompetent, and immaterial; which objection was sustained; to which counsel for the prisoner excepted. It is claimed, on the argument, by the counsel for the prisoner, that, if Hewitt had been permitted to answer the question, he would have testified that Crowell, on the former trial, testified he was distant ten or fifteen rods from the parties, at the time of the shooting; and it is claimed that this testimony is proper, as tending to impeach and discredit the witness Crowell.

The rule is thus stated by Greenleaf: " A witness *cannot be cross-examined as to any fact, which is collat-*

*eral and irrelevant to the issue merely* for the purpose of *contradicting him* by other evidence, if he should deny it, thereby to discredit his testimony. And, if a question is put to a witness which is collateral and irrelevant to the issue, his answer cannot be contradicted by the party who asked the question; but it is conclusive against him." (See *Stokes v. The People*, 53 N. Y., 176.) "But it is *not irrelevant* to inquire of the witness, whether he has not on some former occasion given a *different account* of the matter of fact, to which he has already testified, in order to lay a foundation for impeaching his testimony by contradicting him. The inquiry, however, in such cases, must be confined to matters of *fact only;* mere opinions which the witness may have formerly expressed being inadmissible, unless the case is such as to render evidence of opinions admissible and material." 1 Greenleaf on Evidence, Sec. 449. So far as appears from the record, Crowell could see what transpired, and hear the conversation of the parties, as well at thirty, as at ten or fifteen rods. The question of the distance, at which the witness stood, is not a material inquiry in the case; at the most it is a mere expression of opinion. The objection, therefore, was properly sustained.

The objections to certain questions, propounded to Copeland and Brown, by the prisoner's counsel, were properly sustained.

There is not a particle of testimony tending to show that Collins made threats against the prisoner; yet several questions objected to were so framed as to convey the impression that he had made such threats; nor is there any testimony tending to show that Smith acted in self-defense. Counsel for the prisoner asked the court to instruct the jury:

"If you believe, from the evidence, the killing was in self-defense, you must acquit." ·

"If the defendant committed the act in the reasonable fear of his own life from the deceased, then he is not guilty, and you should acquit him."

"If a man, though in no danger, through fear, alarm, or cowardice, kill another, under the impression that great bodily harm is about to be inflicted on him,—if the facts and circumstances excited a reasonable belief, reasonable in proportion to his mental condition,—it is neither murder nor manslaughter, but self-defense."

Which instructions were properly refused by the court. Instructions should be given with reference to the evidence in each particular case. *Dodge v. The People*, 4 Neb., 231.

We see nothing in the instructions given by the court, of which the prisoner can complain; nor is there error in the refusal to give the instructions asked. Many of the questions, raised by the assignment of errors, have already been decided by this court. *Smith v. The State*, 4 Neb., 277. It is, therefore, unnecessary to review them here.

The judgment of the district court is reversed, and the cause remanded for a new trial.